**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION**

| | |
|---|---|
| **IN RE:**<br><br>**AMERICORE HOLDINGS, LLC,** *et al.*[1]<br><br>        **Debtors.** | **Chapter 11**<br>**Jointly administered**<br><br>**Case No. 19-61608** |
| **ST. ALEXIUS HOSPITAL CORPORATION #1,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**JOVITA CARRANZA, in her capacity as Administrator for the U.S. Small Business Administration,**<br><br>        **Defendant.** | **Adversary No. 20-06005** |

## TEMPORARY RESTRAINING ORDER

The Court has considered the Complaint [ECF No. 1] against the United States Small Business Administration ("SBA"), filed by St. Alexius Hospital Corporation #1 as a debtor (Case No. 19-61610) in the Chapter 11 cases being jointly administered under the lead case of *In re Americore Holdings, LLC* (St. Alexius, individually, the "Plaintiff" and collectively with the jointly administered cases, the "Debtors"), by and through Carol L. Fox, the Chapter 11 Trustee, and the request for emergency issuance of a temporary restraining order, preliminary injunction

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Americore Holdings, LLC (0115); Americore Health, LLC (6554); Americore Health Enterprises, LLC (3887); Ellwood Medical Center, LLC (1900); Ellwood Medical Center Real Estate, LLC (8799); Ellwood Medical Center Operations, LLC (5283); Pineville Medical Center, LLC (9435); Izard County Medical Center, LLC(3388); Success Healthcare 2, LLC (8861); St. Alexius Properties, LLC (4610); and St. Alexius Hospital Corporation #1 (2766).

1

and permanent injunction therein [ECF No. 2]. The Defendant Administrator of the Small Business Administration responded, a hearing was held on May 7, 2020, and the matter is submitted. [ECF No. 10.]

The Plaintiff contends the Administrator improperly prevented its access to a loan under the Paycheck Protection Program ("PPP") established by the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") because the Plaintiff is a debtor in a chapter 11 reorganization. Federal Rule of Bankruptcy Procedure 7065 (incorporating Federal Rule of Civil Procedure 65) governs the procedure for seeking a temporary restraining order. A court may issue a temporary restraining order if (1) an affidavit or verified complaint shows the movant will suffer immediate and irreparable injury, loss or damage before the adverse party may oppose the request; and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why notice is not be required. FED. R. BANKR. P. 7065(b)(1).

The movant has satisfied these conditions, but the Administrator also had the opportunity to appear. The service address was possibly incorrect, but the Administrator was ably represented at the May 7 hearing and was able to file its opposition papers for consideration before this ruling. *MLZ, Inc. v. Fourco Glass Co.*, 470 F. Supp. 273, 275 (E.D. Tenn. 1978) (if an adverse party is present at and participates in the hearing, a court may treat the request as one for a preliminary injunction).

The movant bears the burden of proof. FED. R. BANKR. P. 7065(b). To issue a temporary restraining order, the bankruptcy court weighs the same factors it considers for a preliminary injunction. *Contech Casting, LLC v. ZF Steering Sys., LLC*, 931 F. Supp. 2d 809, 814 (E.D. Mich. 2013) (citing *Monaghan v. Sebelius*, 916 F.Supp.2d 802, 807 (E.D. Mich. 2012)). The factors a court must consider are: (1) the likelihood of the Plaintiff's success on the merits; (2)

whether the Plaintiff will suffer irreparable injury without the injunction; (3) the harm to others if the injunction is granted; and (4) whether the injunction would serve the public interest. *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 858 (6th Cir. 1992) (citing *Unsecured Creditors' Comm. of DeLorean Motor Co. v. DeLorean (In re DeLorean Motor Co.)*, 755 F.2d 1223, 1228 (6th Cir. 1985)). Issuance of a temporary restraining order is within the discretion of the court. *Id.* at 859.

Based on the record in this adversary proceeding, the main case, and the following analysis, the Plaintiff will suffer immediate and irreparable harm without issuance of this temporary relief. The Plaintiff is entitled to issuance of a temporary restraining order.

**A.     Substantial Likelihood of Success.**

The likelihood of success is not guaranteed to either side, but initially the balance favors the Plaintiff. The Administrator is starting at a disadvantage. Several courts have recently required the relief requested by the Plaintiff. *See Springfield Hosp. Inc. v. Carranza (In re Springfield Hosp. Inc.)*, Case No. 19-10283, Adv. No. 20-1003, 2020 WL 2125881 (Bankr. D. Vt. May 4, 2020); *Roman Catholic Church of the Archdiocese of Santa Fe v. United States of America Small Business Administration (In re Roman Catholic Church of the Archdiocese of Santa Fe)*, Case No. 18-13027 t11, Adv No. 20-1026 t, 2020 WL 2096113 (Bankr. D.N.M. May 1, 2020); *Calais Reg'l. Hosp. v. Carranza (In re: Calais Reg'l Hosp.)*, Case No. 19-10486, 2020 WL 2201947 (Bankr. D. Me., May 1, 2020); *Penobscott Valley Hosp. v. Carranza (In re Penobscot Valley Hosp.)*, Case No. 19-10034, 2020 WL 2201943 (Bankr. D. Me., May 1, 2020); *Hidalgo Cty. Emergency Serv. Found. v. Jovita Carranza (In re Hidalgo Cty Emergency Serv. Found.)*, Case No. 19-20497; Adv No. 20-2006, (Bankr. S.D. Tex.) (transcript of oral ruling rendered April 24, 2020). During argument at the May 7 hearing, the only distinction made was that these cases were wrongly decided.

The Administrator argues that the bankruptcy limitation exists because the PPP was added as part of existing authority under Section 7(a) of the Small Business Act (codified in 15 U.S.C. § 636(a)).  There is some support for this argument.

The PPP was created through a new part 36 to § 636(a).  Part (a)(36)(B) provides for PPP loans: "Except as otherwise provided in this paragraph, the Administrator may guarantee covered loans under the same terms, conditions, and processes as a loan made under this subsection."  Part 636(a)(1)(A)(ii) addresses liquidity:

> On and after October 1, 2015, the Administrator may not guarantee a loan under this subsection if the lender determines that the borrower is unable to obtain credit elsewhere solely because the liquidity of the lender depends upon the guaranteed portion of the loan being sold on the secondary market.

The Administrator's claims the bankruptcy restriction is necessary based on higher risk seems to lack a foundation.  In many situations, an entity in bankruptcy might suggest a higher risk.  But there is no doubt any PPP loan carries significant risk to the federal government due to a slide into bankruptcy.  It seems likely PPP loan beneficiaries will make up a sizeable number of the massive surge in bankruptcy cases predicted to start later this year.

In addition, § 1106(b) of the CARES Act deals with forgiveness of the PPP loan if the funds are used in the manner prescribed for ordinary business expenses such as payroll costs. *See also* 15 U.S.C. § 636(a)(36)(F).  The Administrator argued that a chapter 11 debtor was more likely to fail to comply with the conditions that allow forgiveness.  That assertion is not credible.

The Plaintiff has over 300 employees and the papers filed indicate any loan proceeds are dedicated to the expenses that will justify loan forgiveness.  It is much more likely that an entity under the care of a bankruptcy court will comply with the forgiveness rules than violate them.  That conclusion is even more likely in this case because an independent trustee was appointed months ago.

The CARES Act was scrutinized to determine if there is some authority for the Administrator's actions. There is a section that is specifically titled, "Bankruptcy." This section makes changes to the Bankruptcy Code unrelated to this issue. An additional provision excluding PPP loans to entities going through chapter 11 reorganization, a simple demand, was not included by Congress.

Further, provisions in § 636 suggest this Court should resolve doubts in favor of a borrower. For example, the Administrator is allowed to make loans to small businesses that are harmed by the loss of a Department of Defense contract or started by a veteran. 15 U.S.C. § 21A(i). The statute specifically recognizes the greater risk with such loans, but still provides that "any reasonable doubts concerning the firm's proposed business plan for transition to nondefense-related markets shall be resolved in favor of the loan applicant when making any determination regarding the sound value of the proposed loan in accordance with paragraph (6)." *Id. See also id.* at § 636(a)(6).

The Administrator suggests there was a violation of sovereign immunity, but that is not clear at this stage. Section 106 of the Bankruptcy Code abrogates sovereign immunity regarding § 525(a), which protects chapter 11 debtors from discriminatory treatment. 11 U.S.C. §§ 106 and 525. Application of the statute suggests the Administrator has exceeded her statutory authority by requiring lenders to discriminate against the Plaintiff by excluding it from the PPP loan application process. *Consider In re Rose*, 23 B.R. 662, 666-67 (D. Conn. 1982) (preventing the government from excluding a debtor from certain benefits of mortgage financing solely because of bankruptcy and without taking into account present financial capability). *See also* 11 U.S.C. § 105(a).[2]

---

[2] This order does not decide whether the Plaintiff qualifies for a PPP loan.

5

The Administrator also appeared to push for action through administrative channels. This is the usual first recourse for aggrieved parties. But when an aggrieved party cannot obtain relief before it is forced out of business by delays or lack of action, courts have stepped in. There is also contrary authority, but this relief is only temporary and the Administrator will have the opportunity to press this position when more permanent relief is considered.

At this point, the Plaintiff has met its burden to show a likelihood of success on the merits. There is no doubt more information is required to reach a definitive conclusion.

**B.      Irreparable Harm to the Plaintiff and Harm to the Defendant.**

The Plaintiff contends that closure of the Hospital and its other properties would be devastating both from a patient health and an economic perspective. The record bears out the fact that the Plaintiff will suffer irreparable harm if relief is not granted.

The Plaintiff operates property of the Debtor in two locations. The primary location, St. Alexius Hospital, is located at 3933 S. Broadway, St. Louis, Missouri. It has served the St. Louis community since 1869. The Hospital offers 24/7 services in the south St. Louis area in a zip code with 28,000 residents whose annual median household income is less than $33,000. It offers an emergency department, intensive care unit, and radiology, cardiology, therapy, and psychiatric services as well as a senior care center. The Hospital employs over 300 employees most of whom live paycheck to paycheck. It primarily treats uninsured patients, and patients who rely on Medicare and Medicaid.

The Plaintiff also operates another property located at 3535 S. Jefferson Avenue, St. Louis, Missouri. The other property which houses the St. Alexius Primary Care Office and the Psychiatric Intensive Outpatient Program, in addition to the Lutheran School of Nursing, which

has been training nurses for over 100 years. A medical pavilion at this location also serves as a medical office building for area physicians.

The State of Missouri has been under a "stay at home" order since April 6, 2020, which may or may not still apply. A significant portion of the Plaintiff's collective revenue is derived from outpatient procedures and non-essential office visits or medical procedures. Following the issuance of Missouri's stay at home orders, non-essential medical procedures and office visits were postponed, rescheduled or canceled. These cancellations and deferrals have had—and are expected to continue to have— at least a 25% reduction in the Plaintiff's cash receipts alone. This is the type of harm the PPP loan program was intended to address, and it is particularly devasting to a hospital.

On April 27, 2020, Missouri issued guidelines for a slow reopening of certain businesses until May 31, 2020.  However, significant delays in scheduling elective procedures and emergency room visits will occur due to, among other things, nursing home lockdowns and the population's wariness to seek medical care in light of the COVID-19 pandemic.

The Plaintiff is in urgent need of the funds provided under the PPP to pay nurses, physicians, and other clinical personnel critical to the safe and secure operations of its properties, and the treatment and care of patients, including those with the COVID-19 virus. The PPP funds are critical to the Plaintiff's payroll obligations at this unprecedented historical time created by COVID-19.

But the PPP funds available are finite and diminishing.  The money available for the first round of financing was gone quickly, although the argument suggested there are funds in a second tranche.  No doubt, those funds will go quickly and will not survive until this dispute is fully litigated.  So there is an urgent need to apply for the funds now.

In comparison, the Defendant will suffer little harm by the issuance of 14-day restraining order. Allowing the Plaintiff to file an application does not guarantee loan approval or that funds will be immediately distributed or used.

The Administrator suggests a ruling in favor of the Plaintiff would interfere with the difficult process of administering the PPP loan program. That argument is without merit. This Order only applies to the Plaintiff.[3] Further, the initial analysis suggests the Administrator has overstepped her authority and possibly endorsed discrimination. So any hardship is brought on by the administration's own actions.

The Administrator argues the Plaintiff lacks standing because it checked a second box that would exclude it from the PPP loan program. If that is the case, then this ruling has no detrimental effect.

The risk of harm to the Plaintiff outweighs the harm to the Defendant if the relief is granted.

**C.    Public Interest**

Issuance of this temporary restraining order is in the public interest. The lack of this source of liquidity risks the Plaintiff's survival and the health and treatment of patients. The Plaintiff needs the PPP loan to shore up the Hospital's finances and keep it a viable health care provider in an underserved and depressed community. This service is particularly critical as the nation and the local community come out of pandemic-driven closures.

The continued gainful employment of the Plaintiff's approximately 300 healthcare employees also benefits the community and the public interest as a whole. The Plaintiff operates a "front line" health care business that is vitally important, even in normal times, and even more

---

[3] Further, by the time this Order is addressed, the Administrator will have already dealt with the other debtors that received similar relief cited supra. So little additional work is required by this Order.

so now.  It is important to maintain a responsible and knowledgeable team capable of serving the depressed Missouri region in which the hospital businesses reside.  The public interest is clearly served by the Plaintiff's ability to take steps to maintain 100% of its usual staffing levels in the midst of the COVID-19 pandemic.

Based on the findings and conclusions set forth above, it is hereby ORDERED:

1. The Plaintiff's Emergency Motion for Temporary Restraining Order and Request for Hearing Date and Briefing Schedule with Respect to the Debtor's Request for a Preliminary Injunction [ECF No. 2] is GRANTED.

2. A temporary restraining order is issued, with notice, and directed to Jovita Carranza in her capacity as Administrator for the United States Small Business Administration, and all agents, servants, employees, and any parties acting in concert with any of the foregoing parties (collectively the "Restrained Parties").

3. Until the expiration of this temporary restraining order, its scope is as follows:

    a. The Plaintiff is hereby authorized to submit a PPP loan application to any lender with the words "or presently involved in any bankruptcy" stricken from any requisite form.

    b. If the Plaintiff satisfies all the other conditions in question #1 to the loan application form and it still must mark a box indicating it is in bankruptcy, it may mark the box "no."

    c. The Restrained Parties shall consider the PPP application and fully implement all aspects of the PPP program with respect to the Plaintiff without any consideration of the involvement of the Plaintiff or any of the other Debtors in any related proceedings in any bankruptcy proceedings.

    d. To the extent any bank requires the Plaintiff to execute any other forms, applications, or other documents for a PPP loan that include any language about whether the entity or any of the Debtors are involved in any bankruptcy proceedings, the Plaintiff is authorized to strike the portion of such language about involvement in any bankruptcy and the Restrained Parties shall process the forms, applications, or other documents without any consideration of the involvement of the parties in any bankruptcy proceedings.

    e. The Restrained Parties shall not make or condition the approval of any PPP loan guaranty to the Debtor contingent on the Debtor's not being "presently involved in any bankruptcy."

4. The Plaintiff is not required to post a bond. FED. R. BANKR. P. 7065; *In re Hidalgo County Emergency Service Foundation*, Case No. 19-20497, 2020 WL 2029252, at *2 (Bankr. S.D. Tex. Apr. 25, 2020). Any question of sanctions or damages is reserved for further action and will depend on the Administrator's compliance with this Order.

5. The Court will conduct a telephonic evidentiary hearing on Plaintiff's request for a preliminary injunction at **9:00 on May 21, 2020**. **Parties shall call in approximately 10 minutes prior to the start of the hearing using the following: Toll-free: 1-888-363-4749; Access Code: 9735709.**

6. This temporary restraining order shall expire within 14 days from entry of this Order unless otherwise ordered by the Court.

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Friday, May 8, 2020**
**(grs)**